**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GARY MCKINLEY,              :

                              :

            Plaintiff,        :     No. 4:10-CV-00921

                              :

        v.                 :

                              :     Hon. John E. Jones III

LYCOMING, A TEXTRON     :

COMPANY and UAW LOCAL 787,  :

                              :

           Defendants.    :

**MEMORANDUM**

April 30, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Presently pending before the Court are the Motions for Summary Judgment

of both Defendants. (Docs. 20, 22). The Motions have been fully briefed and are

thus ripe for disposition. For the reasons fully articulated herein, we will grant both

motions in their entirety and dismiss the Plaintiff's Complaint with prejudice.

**I.    PROCEDURAL HISTORY**

Plaintiff Gary McKinley ("Plaintiff" or "McKinley") commenced the above-

captioned action by filing a Complaint against Defendant Lycoming, A Textron

Company ("Lycoming"), and Defendant UAW Local 787 ("Local 787" or "the

Union"), collectively "Defendants," on April 30, 2010. (Doc. 1).[1] Local 787 filed

its Answer and Affirmative Defenses on July 6, 2010 (Doc. 4) and Lycoming filed

a separate Answer and Affirmative Defenses on July 8, 2010. (Doc. 5).

Following a period of discovery, both Defendants filed the instant Motions

for Summary Judgment on September 1, 2011. (Docs. 20, 22). After numerous

motions to extend the briefing period were granted, the Motions have been fully

briefed and are thus ripe for the Court's review. (Docs. 21, 25, 37, 51, 52).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is

---

[1] Plaintiff has exhausted his administrative remedies by filing a Complaint with the Pennsylvania Human Relations Commission and cross-filing the same with the Equal Employment Opportunity Commission. He was issued a Notice of Right to Sue letter, and the instant Complaint was timely filed within ninety (90) days of receipt of said Notice.

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw therefrom. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III.   STATEMENT OF FACTS

The following facts are derived from the record and viewed in the light most favorable to the Plaintiff in accordance with the standard of review applicable to a motion for summary judgment. The facts stated herein will be supplemented as necessary by additional facts throughout our analysis.

Plaintiff Gary McKinley ("Plaintiff") is an adult individual born November 24, 1950. (Doc. 23, ¶ 1). Defendant Lycoming, A Textron Company, ("Defendant Lycoming") is a Pennsylvania corporation with a principal place of business in Williamsport, Pennsylvania. (Doc. 22-1, ¶ 4). Defendant UAW Local 787 ("Defendant Union") is a labor union with a principal place of business located in Williamsport, Pennsylvania. (*Id.* ¶ 1).

Plaintiff was hired as a replacement worker during a highly contested strike at Defendant Lycoming's manufacturing plant on or about June 1, 1998. (*Id.* ¶ 6; Doc. 23, ¶¶ 2-3).  Plaintiff was initially hired as a Drafter but was promoted to Checker A on January 31, 2005. (Doc. 23, ¶¶ 4-5). Plaintiff was a member of the

Defendant Union, and the relationship between the Defendant Union and

Defendant Lycoming was governed by a Collective Bargaining Agreement. (Doc.

22-1, ¶ 7, Ex. 1; Doc. 23, ¶ 7; ).

Beginning early on in his employment and continuing throughout, Plaintiff

was singled out by the other union members, all of whom were younger than him.

(Doc. 37-1, ¶ 8). In his affidavit, Plaintiff states that the younger employees were

treated favorably and got away with things, so he needed to be "on guard all day

long due to the harassment" that the younger employees subjected him to. (Doc.

37-1, ¶ 8). He states that the work environment became unbearable, with the

younger employees constantly harassing him. (*Id.*). He avers that he was cursed at,

made fun of, "shoulder-bumped," given the finger, and that derogatory comments

were made to third parties about Plaintiff. (*Id.*).

Plaintiff complained to his supervisor that younger employees were not

receiving proper training, but when he asked management for permission to train

the employees, his request was denied. (Doc. 23, ¶ 19; Doc. 37-1, ¶ 19).  Plaintiff

repeatedly states that jobs that should have been given to him were given to

younger employees and that he was denied training opportunities made available to

younger employees, although he offers no evidence to support this claim. (Doc. 37-

1, ¶¶ 16-18). In his affidavit, Plaintiff states that "[y]ounger employees were

5

always being sent to school out West" and that he was denied this opportunity. (Doc. 37-1, ¶ 6). Plaintiff explained that he did not present these issues to the union as grievances because he did not believe that it would get him anywhere because the union representatives were younger employees. (Doc. 37-1, ¶ 9).

Throughout his employment, Plaintiff kept detailed daily notes tracking the actions of the younger union employees. The record contains hundreds of pages of the Plaintiff's personal notes, documenting the younger employees' actions during the work day. (*See* Doc. 23, ¶ 21; Doc. 37-1, ¶ 21). The record includes extensive documentation, to the minute, of coworkers' daily activities, noting, in addition to allegedly harassing behaviors, for example: coworker belching (Doc. 24-11, p.2), the time of day that specific coworkers would exit and enter the room (*e.g.*, Doc. 24-11, p. 2), and observing and commenting upon particular employees' attire. (Doc. 24-11, p. 5). Plaintiff admits that he was keeping notes "almost from the start of [his] employment" and that other employees did too, although not to the same extent. (Doc. 44, Plaintiff's Exhibit DDD, ¶ 61).

Plaintiff's friend and former coworker, Walter Cacko, stated in his affidavit that he "personally witnessed the harassment and hostile work environment that Plaintiff was subjected to." (Doc. 37-1, ¶ 29). He explained that the younger union employees would loudly crunch paper on certain days and slam their desk drawers

in order to annoy others. (Cacko Aff.,¶¶ 7-8). Cacko also explained that he was personally disliked merely for associating with the Plaintiff. (Doc. 37-1, ¶ 29). He stated that he and Plaintiff had been to Detroit for training but that "they never received the same training that the younger employees received," pointing out that the younger employees would get "play time" on the computers while he and Plaintiff continued to work. (Doc. 37-1, ¶ 16). He also stated that he learned from another employee that the reason that the other employees disliked Plaintiff and treated him poorly was because "[Plaintiff] is a scab and [the other employees] don't like scabs." (Doc. 37, Ex. C, ¶ 17).

Edward Bohart, Jr., another former employee of Defendant Lycoming, stated that like Plaintiff, he kept notes of incidents at work, but was never told that he could not do so. (Doc. 37-1, ¶ 21). In his affidavit, Bohart stated that the younger union employees seemed to get away with things that they should not have and that Plaintiff took the "brunt" of their behavior. (Doc. 37-1, ¶ 9).

In the summer of 2007, Defendant Lycoming discovered that Plaintiff was keeping daily logbooks chronicling work place events. (Doc. 23, ¶ 21; Ex. F, K). On July 23, 2007, Suzette Snyder, Defendant Lycoming's Human Resources Director, issued Plaintiff an Employee Discipline Record for violation of company rules, specifically for non-productive behavior, verbally reprimanded him, and

instructed him to cease using work time to "observe, notate, and report on co-workers' behavior." (Doc. 23, ¶¶ 22-24). Plaintiff continued to keep notes, and between August 20 and 27, 2007, he submitted a series of complaints to Defendant Lycoming's management regarding coworkers. (Doc. 23, ¶ 25). On August 28, 2007, Plaintiff was issued a Performance Improvement Plan and Last Chance Agreement and referred to Employee Assistance Program counseling. (Doc. 23, ¶ 26). Plaintiff submits in his affidavit that these actions had nothing to do with nonproductive behavior but were instead retaliatory actions for his complaints about the younger union employees. (Doc. 37-1, ¶ 23-24). On September 25, 2007, Plaintiff submitted a resignation letter and two-weeks notice, citing "other opportunities" as the reason for his resignation. (Doc. 23, ¶¶ 27-28; Doc. 37-1, ¶¶ 27-28).

Prior to his last day of work, Plaintiff submitted to Defendant Lycoming an exit interview form, with supplemental pages attached, again documenting his complaints. (Doc. 23, ¶ ¶ 31-33). In this document, Plaintiff does not list age discrimination as a concern, but does state that he believes certain younger union members were not disciplined as they should have been, that the company has failed to adequately respond to the Plaintiff's complaints about younger employees' behavior, and that supervisors and managers were not doing a

satisfactory or efficient job of running the department. (Doc. 23, ¶ 33). In that same

letter, Plaintiff cited "other opportunities" as the grounds for his resignation. (Doc.

23, ¶ 28). Thereafter, Plaintiff requested unemployment compensation benefits and

filed an unfair labor charge with the National Labor Relations Commission; while

both of these filings refer to harassment and a hostile work environment, Plaintiff

did not specifically cite age discrimination as the basis for his resignation. (Doc.

23, ¶¶ 33-39; Doc. 37-1 ¶¶ 33-39).

## IV.    DISCUSSION

In his Complaint, Plaintiff asserts causes of action against the collective

Defendants for violation of the Age Discrimination in Employment Act ("ADEA")

(Counts I-V) in addition supplemental state law claims for wrongful discharge

(Count VI), conspiracy (Count VII), and violation of the Pennsylvania Human

Relations Act ("PHRA") (Count VIII). (Doc. 1). We first address Plaintiff's ADEA

arguments with respect to each Defendant before turning to analysis of Plaintiff's

state law claims.

### A.    ADEA Claims Against Lycoming

As both Defendants point out, claims of age discrimination under the ADEA

are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Fasold*

*v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005) (applying burden-shifting analysis

adopted in Title VII case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), to ADEA claims). The Third Circuit has succinctly articulated the

*McDonnell Douglas* paradigm as follows:

> An employee must first establish a prima facie case of
> discrimination, after which the burden shifts to the
> employer to articulate a legitimate, nondiscriminatory
> reason for its adverse employment decision . . . . If the
> employer articulates one or more such reasons, the
> aggrieved employee must then proffer evidence that is
> sufficient to allow a reasonable finder of fact to find by a
> preponderance of the evidence that the employer's
> proffered reasons are false or pretextual."

*Id.* at 184-85. *See Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005) (applying

burden-shifting analysis adopted in Title VII case, *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973), to ADEA claims). Thus, we first consider whether

Plaintiff has proven a prima facie case of age discrimination.

## 1.   Plaintiff's Prima Facie Case

To establish the elements of his prima facie case, a plaintiff must prove that

he: "(1) was a member of the protected class, i.e., was over 40, (2) was qualified

for the position, (3) suffered an adverse employment decision, and (4) ultimately

was replaced by a person sufficiently younger to permit an inference of age

discrimination." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300-01 (3d

Cir. 2004). If he succeeds in doing so, the burden will shift to the employer to

10

present evidence of a legitimate, nondiscriminatory reason for the adverse action. *Fasold*, 409 F.3d at 184.

The Plaintiff easily meets the first two elements of the test as he has successfully established that he is a member of a protected class and that he was qualified for the position. Both Defendants concede that the Plaintiff is a member of the protected class by virtue of his age; Plaintiff was born on November 24, 1950, and was forty-eight (48) years old when hired and fifty-six (56) years old when he resigned. (Doc. 23, ¶ 1; Doc. 25, p. 10). The Plaintiff was initially hired in June of 1998; he worked for Defendant Lycoming for nine (9) years and was promoted to his most recent position on January 31, 2005. (Doc. 22-1, ¶¶ 5-6; Doc. 24-6, ¶¶ 5-8).  Defendant Lycoming, the hiring entity, concedes that the Plaintiff was qualified for the position, and while Defendant Union denied the same in its Answer, it does not argue the point in its brief. (*See* Doc. 1, ¶ 8; Doc. 21, p. 10; Doc. 25, p. 4 at n.5).

Plaintiff has likewise satisfied the fourth and final element by demonstrating that he was replaced by employees younger than him. Plaintiff stated in his answer to interrogatories, and Defendant Lycoming affirms in its statement of undisputed material facts, that the Plaintiff was replaced by two (2) employees, Christopher Croff and Jon Engle, who were both in their mid-forties at the time of their inter-

company transfer. (Doc. 23, ¶ 41; Doc. 24-17, ¶ 23). The Defendants contend that Plaintiff's replacements are over the age of forty and that they, too, are members of the protected class, and thus argue that any potential for age discrimination liability is negated. However, the Defendants overlook that the fourth element requires only that the replacement is "sufficiently younger" than the plaintiff and does not automatically bar claims where replacement workers themselves are over the age of forty. *See Monaco*, 359 F.3d at 300-01. Thus the replacements' membership in the protected class is irrelevant so long as the replacements were "sufficiently younger" than the Plaintiff.

The record demonstrates that the two replacements were at least ten (10) years junior to the Plaintiff, (Doc. 23, ¶ 41, Doc. 24-17, ¶ 23), and we cannot find as a matter of law that such a substantial age gap is "insufficient" as contended by the Defendants on these facts.  *See, e.g.*, *D'Amico v. Pulte Homes, Inc.*, 2009 U.S. Dist. LEXIS 26441, *7-9 (E.D. Pa. Mar. 23, 2009) (eight year age difference sufficiently younger); *Sempier v. John & higgins*, 45 F.3d 724, 729-30 (3d Cir. 1995) (ten-year age difference sufficient to support prima facie case)). Plaintiff has presented sufficient evidence to meet the fourth element of his prima facie case.

We thus proceed to the third and most difficult element, which is whether the Plaintiff has demonstrated that he suffered an adverse employment decision or

action. The Plaintiff argues in support of this element that his resignation was not

voluntarily and that he was in fact constructively discharged, forced to quit based

on increasing discrimination, thus rising to the level of an adverse employment

decision. Plaintiff also contends that Defendant Lycoming's actions in placing him

on a Last Chance Agreement and Performance Improvement Plan, which included

a requirement that Plaintiff participate in an Employee Assistance Program, were

discriminatory in that other, younger employees who should have been so treated

were not. Finally, Plaintiff argues that Defendant Lycoming provided training to

younger employees that he was denied, and as a result, intentionally made him

ineligible for certain employment opportunities.

Plaintiff's constructive discharge claim requires this Court to consider

whether the Plaintiff resigned as a result of age discrimination which made

employment conditions "so intolerable" that a reasonable person in his position

would likewise have resigned. *See Duffy v. Paper Magic Group*, 265 F.3d 165, 167

(3d Cir. 2001); *see also* EMPLOYMENT DISCRIMINATION, § 127.06 (2011).

Specifically, a court must consider the evidence of age discrimination and

"determine whether a reasonable jury could find that the employer permitted

conditions so unpleasant or difficult that a reasonable person would have felt

compelled to resign." *Duffy*, 265 F.3d at 167. After careful study of all of the

evidence currently before the Court, we cannot find that a genuine issue of material fact exists with regard to whether Plaintiff was constructively discharged due to age discrimination.

Plaintiff alleges that he was severely harassed, that "nails were placed under his tires, a dead possum was placed in his mailbox, he was repeatedly shoulder bumped, he was being followed to [the] men's room to the point that he had to go out of his way to use another restroom facility, water was intentionally spilled on the floor next to his cubicle, there was excessive name calling, he was cussed at, threats were made against his life, he was given the finger, his work area was sabotaged, doors were being slammed shut in front of him, tools were being thrown and drawers were being slammed, doors were pushed into Plaintiff, [and] derogatory comments were being made to third parties against Plaintiff." (Doc. 37-1, ¶ 8).

"Constructive discharge may occur when the employer is aware that the employee has been subjected to a continuous pattern of harassment and the employer does nothing to stop it." *Duffy*, 265 F.3d at 168. Notwithstanding the parade of horribles he alleged, Plaintiff has entirely failed to produce any evidence supporting these claims other than his self-serving affidavit, which is insufficient

for purposes of contesting a summary judgment motion.[2] *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.").

The Plaintiff's allegations with respect to Lycoming's alleged refusal to train the Plaintiff in areas where younger employees received training suffer from the same flaws. Other than Plaintiff's own self-serving affidavit, he has presented no evidence to support that he has been denied training which resulted in the loss of an employment opportunity.[3]

---

[2] Plaintiff makes these broad and inflammatory accusations while offering no evidence, other than his own affidavit, to substantiate them. Indeed, this lack of citation and support extends to all aspects of Plaintiff's case, not merely this one point. We admonish that "[j]udges are not like pigs, hunting for truffles buried in briefs, in the universe of legal precedent, or the record on summary judgment." *Smith v. Central Dauphin School Dist.*, 2007 WL 2262936, *6 (M.D. Pa. Aug. 6, 2007). It is counsel's responsibility to the Court, and not the Court's independent obligation, to support Plaintiff's allegations with evidence of record. Regardless of this candidly sloppy, and frequently nonexistent, citation to the record, we note that we have conducted an independent review of the hundreds of exhibits submitted and that other than one employee's statement that he witnessed coworkers "circle the building in their car or waiting in the parking lot looking for [Plaintiff,]" (Doc. 37, Exhibit A, ¶ 10), the record does not indicate that Plaintiff's conclusory allegations are supported by testimony, affidavit, or other evidence whatsoever.

[3] Plaintiff does present the affidavit of a coworker, Mr. Edward Bohart, Jr., which states that "I went to [a supervisor] and said that I wanted to get some basic training on the CAD modeling and he sent me for one week to Detroit, Michigan" and that "I personally know that Gary was denied the training." (Doc. 37, Ex. A, ¶¶ 22, 24). Plaintiff also offers the affidavit of

Finally, we turn to the Last Change Agreement, the Performance

Improvement Plan, and the requirement that Plaintiff participate in an Employee

Assistance Program. Plaintiff, in essence, contends that these actions by Defendant

Lycoming constitute disparate discipline, which is actionable under the ADEA.

*See, e.g.*, *Miller v. Aramark Healthcare Support Servs.*, 555 F. Supp. 2d 463, 467,

471 (D. Del. Jan. 14, 2008). The record amply supports Plaintiff's contention

that he was subject to discipline by Defendant Lycoming.

Specifically, the  record shows that Defendant's human resources director

issued Plaintiff an employee disciplinary record, which is the equivalent of a verbal

reprimand, on July 23, 2007. (Doc. 23, ¶ 22 (Lycoming admission of discipline);

Doc. 24-6, ¶ 25 (human resources director account of discipline); Doc. 24-13

(employee discipline record)). The record further supports that on August 28,

2007, Defendant Lycoming placed the Plaintiff on a Last Chance Agreement and

Performance Improvement Plan and required him to participate in an Employee

---

Walter Cacko, another employee of the Defendant, which states that "Gary and I went to Detroit
for training but we never received the same training that the younger employees got." (*Id.*, Ex. C,
¶ 19). Even viewing all evidence in favor of Plaintiff, this evidence alone, viewed in the context
of the entire record, does not demonstrate that the Plaintiff suffered an adverse employment
action recognized by the ADEA. Plaintiff has failed to establish that he was terminated, demoted,
denied a promotion, falling behind, or even that he was less skilled than other employees.
Plaintiff's bare assertion that he was "denied an employment opportunity" because he was less
skilled and insufficiently trained in comparison to younger employees is thus entirely
unsupported.

Assistance Program. (Doc. 23, ¶ 26 (Lycoming admission of discipline); Doc. 24-6,

¶¶ 29-31 (human resources director account of last change agreement discipline);

Doc. 24-15 (last chance agreement); Doc. 24-16 (performance improvement plan)).

Accordingly, we find that the Plaintiff has proven the elements of a *prima*

*facie* case of age discrimination: that is, Plaintiff has demonstrated to this Court

that he suffered adverse employment action in the form of disciplinary action, that

he was a member of the protected age group, that he was qualified for his position,

and that his replacements were sufficiently younger than him to raise an inference

of discrimination. This of course does not end our analysis, since Defendant

Lycoming argues that its actions were unrelated to Plaintiff's age but instead a

result of his nonproductive workplace behavior. However, this argument is most

appropriately analyzed at the second stage of the *McDonnell Douglas* paradigm

and is thus irrelevant to Plaintiff's showing of a prima facie case. *See Fasold*, 409

F.3d at 184 (citing *McDonnell Douglas*, 411 U.S. 792).

### 2.      Defendant's Proffered Nondiscriminatory Reasons

We thus proceed to the second step of the *McDonnell Douglas* framework

which queries whether the employer has proffered a legitimate, nondiscriminatory

reason for the adverse employment action. *See Fasold*, 409 F.3d at 184. Defendant

Lycoming offers two plausible reasons to support its decision to place Plaintiff on the Last Chance Agreement and Performance Improvement Plan: first, the Plaintiff violated company policy by engaging in nonproductive behavior during the work day and taking actions which implicated the workplace disciplinary provisions regarding stalking and, second, even if the Plaintiff was harassed, such behavior was unrelated to his age and was solely based on his perceived status as a union "scab" or "dissident."

In support of their first argument, that the Plaintiff had been unproductive at work and violated several workplace policies, the Defendant cites to hundreds of pages of the Plaintiff's personal notes, made while on the clock. These notes take almost minute-by-minute documentation of the actions of fellow employees during the work day. (Doc. 23, ¶ 21; Doc. 37-1, ¶ 21). The extent of this documentation fully supports the Defendant's purported concern that Plaintiff's behavior was unproductive, distracting, and bordering on stalking. The record includes extensive documentation, to the minute, of coworkers' daily activities, noting, in addition to allegedly harassing behaviors, such trivial things as coworker belching (Doc. 24-11, p.2 ("6:52 . . . S.B.-belching . . . 9:20 . . . S.B. belching"), the time of day that specific coworkers would exit and enter the room (Doc. 24-11, p. 2 ("7:17-7:19 . . . C.P. break room . . . J.S. break room . . . 9:15 . . . C.P.-out of room"), and even

18

going so far as to observe and comment upon particular employees attire. (Doc. 24-11, p. 5 ("S.B. is wearing a shirt w/ the sleeves torn off (like a muscle shift) (t-shirt).").

Plaintiff admits that he was keeping notes "almost from the start of [his] employment," although he is unsure when the Defendant learned of it. (Doc. 44, Plaintiff's Exhibit DDD, ¶ 61). The Plaintiff appears to have gone beyond documenting the behavior he found offensive and escalated to a disturbing level of observation and recording of his coworkers' behavior. Defendant Lycoming's contention that it placed Plaintiff on the Last Chance Agreement and Performance Improvement Plan because he was unproductive at work and violating policy is substantially supported by the record and Plaintiff's own admissions.

Further, Defendant Lycoming, and unknowingly, the Plaintiff himself, have presented evidence that any of the behavior directed at the Plaintiff by coworkers was entirely unrelated to the Plaintiff's age but instead based on his coworkers' perception of the Plaintiff as a union breaker for crossing the picket line during a highly contested strike. (Doc. 23, ¶ 2). Plaintiff attached a ten-page addendum to his exit interview form, detailing the harassment that he endured from coworkers, however not once does he refer to age discrimination. (Doc. 43, pp. 19-25). Indeed, in Plaintiff's Charge Against Labor Organization filed with the National Labor

Relations Board, he does not mention age discrimination but contends that he was treated poorly because he "was perceived as a union dissident." (Plaintiff's Exhibit WW). Specifically, Plaintiff states that the Last Chance Agreement was "in retaliation for my complaints about safety, complaints about harassment by union stewards and because I was perceived as a union dissident." (Plaintiff's Exhibit XX). As aforestated, Walter Cacko, a coworker of Plaintiff, stated in his affidavit that Plaintiff was treated this way because "[he] is a scab and [the other employees] don't like scabs." (Plaintiff's Exhibit C, ¶ 17). Plaintiff's proffered evidence is devoid of any indication, other than conclusory and unsupported allegations, that the alleged harassment was a result of age discrimination.

Both of the Defendant's proffered rationales demonstrate that the alleged harassment and disciplinary action were not age related but instead related to Plaintiff's perceived status as a union dissident and his engagement in nonproductive behavior during the work day. Defendant Lycoming has offered substantial evidence to support that Plaintiff engaged in nonproductive and borderline troubling notetaking throughout the workday, resulting in his placement on the last chance agreement and performance improvement plan. (*See* Doc. 23, ¶ 21; Doc. 37-1, ¶ 21; Doc. 44, Exhibit DDD, ¶ 61; Doc. 24-11 (sample of notes)). Further, the Plaintiff's own filings with the National Labor Relations Board,

statements by coworkers, and evidence presented by the Defendant indicate that

any alleged harassment by coworkers was not related to the Plaintiff's age but

instead based on Plaintiff's status as a union breaker. (Plaintiff's Exhibit C, ¶ 16;

Exhibit TT; Exhibit WW; Exhibit XX). Both of these theories are legitimate

nondiscriminatory reasons for Defendant Lycoming's actions.

Thus the burden of proof returns to the Plaintiff to demonstrate that the

Defendant's decision was pretextual; that is, that it was merely a facade and the

true reason for his placement on the Last Chance Agreement and Performance

Improvement Plan was to discriminate against him and induce him to resign

because of his age. *See Fasold*, 409 F.3d at 184. The Plaintiff's burden at this point

was articulated by the Third Circuit in *Fuentes v. Peskie*, 32 F.3d 759 (3d Cir.

1994):

> A plaintiff who has made out a prima facie case may
> defeat a motion for summary judgment by *either* (i)
> discrediting the proffered reasons, either circumstantially
> or directly, or (ii) adducing evidence, whether
> circumstantial or direct, that discrimination was more
> likely than not a motivating or determinative cause of the
> adverse employment action.

*Id.* at 764. The Plaintiff provides neither circumstantial nor direct evidence

discrediting the Defendant's proof that Plaintiff was engaged in nonproductive

behavior. Indeed, other than a conclusory assertion that the proffered rationals are

pretextual, Plaintiff has failed to provide any evidence which persuades this Court that the Defendant's actions were predicated on Plaintiff's age.

While we are sympathetic to Plaintiff's plight relative to his coworkers, and if the allegations are true, certainly disapprove of their behavior, nothing in the record establishes that the Plaintiff is entitled to judgment against Defendant Lycoming for age discrimination. It has long been established in this Circuit that "[t]o survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005); *see also* Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."). This the Plaintiff has failed to do.

While an uncomfortable work environment is unfortunate, the same cannot in and of itself form the basis of an ADEA complaint. Indeed, as the Third Circuit has previously held, "[e]mployees are not guaranteed stress-free environments and discrimination laws cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998) (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992)). The ADEA is not the

proper medium for Plaintiff to air his grievances about his coworkers' perception of him as a union dissident and their associated dislike. Accordingly, Defendant Lycoming's Motion for Summary Judgment on Counts I, III, IV, and V is granted.

### 2.    Union Liability

The Defendant Union contends that Plaintiff's claim against it is barred by his failure to follow grievance procedures outlined in the Collective Bargaining Agreement ("CBA"). The Union argues that, while the Plaintiff did complete the first step by verbally informing a supervisor about his concerns, he failed to present evidence demonstrating that he also complained in writing, the second grievance requirement under the CBA. The Union thus contends that Plaintiff's claim must fail because he failed to exhaust all of his remedies. Regardless of this issue, however, because we have found that no genuine issues of material fact remain with respect to the merits of the discrimination claims, the Defendant Union is entitled to judgment in its favor as a matter of law.

An employee may assert a claim for age discrimination against his or her union in certain circumstances. *See Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 664, 667 (M.D. Pa. Mar. 30, 2009). In order to survive summary judgment and establish a prima facie case of age discrimination against the Defendant Union, Plaintiff must demonstrate that he was subjected to age discrimination, that he

requested action by the union, and that the union ignored his request that they take action. *See id.* at 664 (citing *Boyer v. Johnson Matthey, Inc.*, 2005 U.S. Dist. LEXIS 171, *71 (E.D. Pa. Jan. 6, 2005); *Snyder v. Teamsters Local No. 249*, 2005 U.S. Dist. LEXIS 19055, *10 (W.D. Pa. Sept. 2, 2005)).

As a threshold matter, we note that we have already rejected Plaintiff's age discrimination claim against his employer and that he is thus unable to meet the first element of the union liability standard. However, to return to the procedural point raised by the Defendant Union, we note that in the event that age discrimination did in fact occur, Plaintiff has failed to demonstrate that he filed grievances with the Defendant Union and that the Defendant Union ignored his legitimate requests to take action. Indeed, Plaintiff stated that he assumed the Defendant Union was conspiring against him with Defendant Lycoming and thus opted *not* to file grievances. (Doc. 37-2, ¶ 10; Plaintiff's Ex. AAA, ¶¶ 38-39). Because the Plaintiff has failed to establish any of the elements of a union liability claim, *see Slater*, 613 F. Supp. 2d at 667, the Defendant Union's Motion for Summary Judgment on Counts II, III, IV, and V is granted.

### 3.      State Law Claims

Lastly, Plaintiff has alleged several state law claims for violation of the Pennsylvania Human Relations Act, wrongful discharge, and conspiracy. We

briefly address each of these claims in turn.

### A.     The Pennsylvania Human Relations Act

Plaintiff, in Count VII, charges the Defendants with violation of the

Pennsylvania Human Relations Act ("PHRA"). It has long been established that

"Pennsylvania courts assess PHRA [claims] in accord with [their] federal

counterparts." *Burgess-Walls v. Brown*, 2011 U.S. Dist. LEXIS 94087, *7 (E.D.

Pa. Aug. 22, 2011) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996));

*Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)).

Therefore, because we have found that Plaintiff has failed to state a meritorious

claim under the ADEA, we likewise must conclude that Plaintiff has failed to state

a viable claim for violation of the PHRA.

### B.     Wrongful Discharge

In Count VI of his Complaint, Plaintiff asserts that the Defendants actions in

creating a hostile work environment, placing him on the Last Chance Agreement,

and referring him to the Employee Assistance program forced his resignation, thus

effecting a wrongful constructive discharge. (Doc. 1, ¶¶ 61-64; Doc. 37, p. 14-15).

As a threshold matter, we note that this Court has previously rejected such a claim

as not recognized against an employee's labor union. *See Slater*, 613 F. Supp. 2d at

663 ("[The] Union cannot be liable for Plaintiff's alleged discriminatory

termination because she was terminated by her employer, not by the union.").

Accordingly, the wrongful discharge claim against the Defendant Union is without

merit and we review the claim only as it pertains to Defendant Lycoming.

A plaintiff who brings a wrongful discharge or wrongful termination action

in Pennsylvania, an at-will employment state, carries an exacting burden. The

Pennsylvania Superior Court has succinctly articulated the nature and requirements

of a wrongful termination action:

> Historically, Pennsylvania has recognized an employer's unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition. That right has been tempered with the emergence of the common law doctrine of wrongful dismissal whereby an employee may premise a cause of action on either tort or contract principles.
>
> . . .
>
> . . . An essential element permitting a cause of action for wrongful discharge is a finding of a violation of a clearly defined mandate of public policy which "strikes at the heart of citizen's social right, duties, and responsibilities. The public policy exception is a narrow one.
>
> Since the wrongful discharge action first was recognized [in Pennsylvania] as cognizable . . . it is now settled law in Pennsylvania that if the discharge of an employee-at-will threatens public policy, the employee *may* have a cause of action against the employer for wrongful discharge.

26

*Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1179 (Pa. Super. Ct. 1989) (emphasis

added) (quoting *Geary v. U.S. Steel Corp.*, 319 A.2d 174 (Pa. 1974)). Thus, in

order for a plaintiff to succeed on a wrongful discharge claim under the public

policy exception, he must first demonstrate that his employment was terminated by

an act of the defendant, and second, he must overcome the strong presumption in

favor of at-will employment by demonstrating a violation of a "clearly defined

mandate of public policy." *Id.* at 1179.

This exacting burden Plaintiff has failed to meet. Indeed, Plaintiff's

arguments are markedly deficient to survive a Defendant Lycoming's Motion for

Summary Judgment. The Plaintiff has failed to present any argument with respect

to the wrongful discharge claim individually, but instead appears to argue the claim

as an extension of the alleged PHRA violation, a cause of action we have already

dismissed. While the Plaintiff's subpar efforts in this regard require no additional

consideration, we note only that had he actually argued the merits of the wrongful

discharge claim, we would nonetheless conclude, as we did *supra* with Plaintiff's

ADEA claim, that he was neither terminated nor constructively discharged and

thus entirely fails to prove a claim for wrongful discharge under Pennsylvania law.

*See id.* (in addition to public policy barriers, adverse employment action, in the

form of constructive discharge or termination, is a requisite element of a wrongful

termination action).

### C.    Conspiracy

Finally, in Count VII, Plaintiff contends that the Defendant Union met with

Defendant Lycoming "at various and sundry times" over the course of his

employment for the purpose of jointly conspiring against him to "to encourage the

continuation of the problems the Plaintiff was experiencing and to force him to

resign." (Doc. 1, ¶¶ 66-67). Plaintiff's only argument in support of his conspiracy

claim is that because representatives of the Defendant Union were present when

Plaintiff was disciplined, it necessarily must have conspired with Defendant

Lycoming to discipline him. (Doc. 37, p. 15). Such a drastic inference is

unsupported by the record. Indeed, as Defendant Lycoming points out, the record

is entirely devoid of any evidence that the Defendant Union met or communicated

with Defendant Lycoming to discuss Plaintiff whatsoever, and Plaintiff's bare

assertions, speculation, and suspicions are insufficient to survive summary

judgment. *See Kirleis*, 560 F.3d at 161; *Podobnik*, 409 F.3d at 594. Accordingly,

we will grant the Defendants' Motions for Summary Judgment with respect to

Plaintiff's conspiracy claims.

## V.    CONCLUSION

In sum, the Plaintiff has altogether failed to demonstrate that the Defendant Union and Defendant Lycoming should be held liable for a constructive discharge of the Plaintiff under the ADEA or the PHRA, or under the common law doctrines of conspiracy and wrongful discharge. The Plaintiff has fallen woefully short of even the most minimal evidentiary mark for purposes of surviving the Defendants' collective Motions for Summary Judgment. Again, we reiterate that "[e]mployees are not guaranteed stress-free environments and discrimination laws cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Connors*, 160 F.3d at 975.

While the facts presented in the Plaintiff's argument regarding his coworkers' rude deportment are unfortunate, and if true, surely frowned upon by this Court, they do not serve to buttress his age discrimination claims against his employer or his union. Moreover, Plaintiff's self-serving affidavit, otherwise unsubstantiated, is insufficient evidence to support Plaintiff's claims and survive summary judgment. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). For all of the foregoing reasons, we find that the Plaintiff has failed to prove the existence of a genuine issue of material fact both against his employer and against his union, presenting no evidence attributing the alleged age discrimination

to either Defendant. Therefore, we shall grant the Defendants' Motions for Summary Judgment in their entirety. An appropriate Order shall issue.